

**E-FILED**
**CNMI SUPREME COURT**
E-filed: Dec 14 2023 11:56AM
Clerk Review: Dec 14 2023 11:56AM
Filing ID: 71620870
Case No.: 2023-SCC-0010-PET
NoraV Borja



IN THE

# Supreme Court

OF THE

# Commonwealth of the Northern Mariana Islands

---

**IN RE WILLIAM ABRACZINSKAS,**

*Petitioner.*

**Supreme Court No. 2023-SCC-0010-PET**

---

**SLIP OPINION**

**Cite as: 2023 MP 12**

Decided December 14, 2023

———————

CHIEF JUSTICE ALEXANDRO C. CASTRO
ASSOCIATE JUSTICE JOHN A. MANGLOÑA
ASSOCIATE JUSTICE PERRY B. INOS

———————

Superior Court No. 23-0082-CR
Associate Judge Joseph N. Camacho, Presiding

———————

INOS, J.:

¶ 1    William Abraczinskas ("Petitioner" or "Abraczinskas") petitions for a writ of mandamus to disqualify all the Superior Court judges, or in the alternative, to disqualify the judge assigned to the case, because their impartiality might reasonably be questioned. He seeks the appointment of a judge pro tempore. For the following reasons, we GRANT the Petition for Writ of Mandamus and VACATE the Superior Court's denial of the Motion for Disqualification. The Superior Court is ORDERED to reassign Petitioner's case to another judge.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2    Abraczinskas, a recently hired employee of the NMI Superior Court, faces charges for Sexual Assault in the First Degree, Assault and Battery, and Disturbing the Peace, involving another Superior Court employee.

¶ 3    Two of the five Superior Court judges recused themselves. Upon reassignment to Judge Joseph N. Camacho, Abraczinskas immediately moved to disqualify all remaining Superior Court judges, claiming that both his and the alleged victim's respective statuses as Superior Court employees create the appearance of impropriety and require disqualification of all Superior Court judges under 1 CMC § 3308(a). The court denied the motion and set the matter for trial. The petition for Writ of Mandamus and Prohibition followed.[1]

## II. JURISDICTION

¶ 4    The Supreme Court has jurisdiction to issue writs of mandamus under Article IV, Section 3 of the NMI Constitution. *Commonwealth v. Super. Ct.*, 2020 MP 22 ¶ 5.

## III. DISCUSSION

¶ 5    This petition comes to us from a denial of a motion to disqualify under 1 CMC § 3308(a) ("3308(a)"). 1 CMC § 3308 deals with disqualification of judges. Subsection (a) states: "A justice or judge of the Commonwealth shall disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned." *See Tudela v. Super. Ct.*, 2010 MP 6 ¶ 13 (describing 3308(a) as a "waivable catch-all provision"). Unlike section 3308(b) ("3308(b)"), which applies to circumstances when actual bias or some close relationship of the judge requires disqualification, 3308(a) applies when a judge's presence in a case creates the "appearance of impropriety." *Saipan Lau Lau Dev., Inc. v. Super. Ct. (San Nicolas)*, 2000 MP 15 ¶ 9. The existence of the appearance of impropriety is determined by asking whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality could be questioned. *Bank of Saipan v. Superior Court (Disqualification of Castro)*, 2002 MP 16 ¶ 29. Since the appearance of impropriety is an inherently unique and fact-intensive question, a judge's analysis of a 3308(a) motion must be similarly fact-

---

[1]    In his reply brief, Petitioner requests, in the alternative, that we order the disqualification of only Judge Camacho.

intensive. Petitioner requests that we issue a writ of mandamus ordering the court disqualify due to the appearance of impropriety.

### A. Mandamus, Generally.

¶ 6    Mandamus is an extraordinary form of relief, only to be granted in exceptional circumstances. In *Tenorio v. Superior Court*, 1 NMI 1, 8-9 (1989), we explained:

> There are dangers to an unprincipled use of peremptory writs, as for example, the possibility that its use would be an impermissible alternative to the normal appellate process. Its abuse could operate to undermine the mutual respect generally existing between trial and appellate court. Further, appellate courts should insure against the temptation to grant such writs merely because they might be sympathetic to the petitioner's underlying actions. . . . [T]he remedy of mandamus is a drastic one, to be involved only in extraordinary situations; . . . it should be used only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so; and . . . only exceptional circumstances amounting to a judicial "usurpation of power" will justify the invocation of this extraordinary remedy.
>
> *Id.* (quoting *Wills v. United States*, 389 U.S. 90, 95 (1967)).

¶ 7    Acknowledging the importance of striking a balance between our relationship of mutual respect with the Superior Court and our occasional countervailing duty to correct the trial court through a writ of mandamus, we set forth an objective test—a set of five factors to guide us in analyzing a claim that the Superior Court has erred in a way that, under the circumstances, necessitates extraordinary relief. *Id.* at 9. The five *Tenorio* factors we follow are "limiting objective principles in order not to abuse the use of such extraordinary power." *Id.* at 8. The factors are:

> 1. The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief desired;
> 2. The petitioner will be damaged or prejudiced in a way not correctable on appeal;
> 3. The lower court's order is clearly erroneous as a matter of law;
> 4. The lower court's order is an oft-repeated error, or manifest a persistent disregard of applicable rules; and
> 5. The lower court's order raises new and important problems, or issues of law of first impression.
>
> *In re Commonwealth*, 2018 MP 8 ¶ 13.

¶ 8    These factors have always been merely guidelines intended to assist us in weighing the various considerations that arise when deciding whether a writ of mandamus is warranted. We remind ourselves:

> In applying the above guidelines to a particular case, not always will there be a bright-line distinction; and the guidelines themselves

often raise questions of degree as, for example, how clear is it that a lower court's order is wrong as a matter of law, or how severe a damage will petitioner[] suffer if extraordinary relief is withheld. The considerations are cumulative, and proper disposition will often require a balancing of conflicting indicators.

*Tenorio*, 1 NMI 1 at 10 (citation omitted).

Guided by these principles, we turn to this case.

### *B. The Denial of the Motion to Disqualify Was Clearly Erroneous.*

¶ 9     The "threshold" requirement for any grant of mandamus is that the Superior Court must have committed clear error. *In re Commonwealth*, 2016 MP 8 ¶ 8. "While we weigh all the factors, the absence of factor three is dispositive; a writ is not appropriate if the petitioner has not shown clear error." *Commonwealth v. Commonwealth Util. Corp.* 2014 MP 21 ¶ 9. Because there cannot be mandamus without clear error, we start with factor three.

¶ 10     The source to which we look for error is the Order denying Petitioner's Motion for Disqualification. On direct appeal, we review decisions on a motion for disqualification for abuse of discretion. *Commonwealth v. Caja*, 2001 MP 6 ¶ 2. Seemingly by contrast, our mandamus test instructs us to review the decision at issue for clear error. *Tenorio,* 1 NMI at 7–8. However, a court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Lucky Dev. Co. v. Tokai, U.S.A., Inc.*, 3 NMI 79, 84 (1992) (citing *Cooter & Gell v. Hartmarx Corp*, 496 U.S. 384 (1990)). In this case, our analyses for abuse of discretion and clear error are one and the same.

¶ 11     Reviewing for clear error ensures that we accord "high deference" to the Superior Court. *Liu v. CNMI*, 2006 MP 5 ¶ 17. The goal is to determine whether "the court could rationally have found as it did, rather than whether [we] would have ruled differently." *Commonwealth v. Taitano*, 2017 MP 19 ¶ 44 (quoting *Markoff v. Lizama*, 2016 MP 7 ¶ 8) (internal quotation marks omitted). We will not find clear error where a "rational and substantial legal argument can be made in support of the questioned ruling even though on normal appeal a reviewing court may find reversible error." *In re Buckingham*, 2012 MP 15 ¶ 10 (internal quotation marks omitted). Thus, our rule is "if after reviewing all the evidence . . . we are left with a definite and firm conviction that a mistake was made," we will find clear error. *Taitano*, 2017 MP 19 ¶ 44 (quoting *In re Estate of Malite*, 2016 MP 20 ¶ 7).

¶ 12     We ask first whether the law supports the court's reasons for denying the motion for disqualification. If the reasons do not justify the ruling, we will then determine if a rational and substantial legal argument can be made in support of the ruling.

### *i. The Reasons for Denying the Motion to Disqualify Are Improper.*

¶ 13     The court supplied three overarching rationales for denying Petitioner's motion: (1) that Petitioner's "blanket" motion to disqualify all Superior Court

Judges is overbroad; (2) that granting Petitioner's motion would negatively impact future administrative concerns; and (3) that Petitioner fails to analyze why the assigned should be recused under 3308(a) and 3308(b). *See* Super. Ct. Answer. We consider each rationale in turn.

### *1. The Motion Is Overbroad.*

¶ 14 The court reasons that the "blanket" motion to recuse is overbroad under 3308(a) because Petitioner did not analyze the specific grounds for recusal "as to each of the judges." *Id*. at 4. We agree that the motion is overbroad, but not due to a failure to analyze specific grounds for disqualifying each judge. Whether the motion was made under 3308(a) or 3308(b) is an important distinction. *Tudela v. Superior Court*, 2010 MP 6 ¶ 14. A 3308(b)(1) motion asserts that a judge has an actual bias or prejudice. In such circumstances, a separate judge must decide on whether the assigned judge must be disqualified. NMI CODE JUD. COND., Canon 3(D)(c). By contrast, a 3308(a) motion only alleges the appearance of impropriety, so a judge may rule on his or her own disqualification. *Tudela*, 2010 MP 6 ¶ 15. The plain language of 3308(a) requires that judges decide on their own recusal, stating "[a] . . . judge of the Commonwealth shall disqualify himself or herself." 1 CMC § 3308(a). A 3308(a) motion that requests a single judge to order the disqualification of all Superior Court judges is overbroad, and cannot be granted even if the movant has provided specific grounds for disqualification of each judge.

¶ 15 The motion's overbreadth is not fatal, however, because the motion was procedurally sufficient as to the assigned judge. Under 1 CMC § 3309(b), which governs the procedure for parties moving to disqualify, "[w]henever a party . . . believes that there are grounds for disqualification of the . . . judge . . . , that party may move for disqualification of the judge . . . stating specifically the grounds for such disqualification." *Id.* Here, the motion, though overbroad, included a request to disqualify the assigned judge and stated the grounds—appearance of impropriety due to Petitioner's and the alleged victim's respective statuses as employees of the Superior Court. Petition at 1–2. Because we do not strictly construe a motion against recusal, the overbreadth of the request alone could not form a basis for denying the motion. *Saipan Lau Lau Dev., Inc. v. Super. Ct. (San Nicolas)*, 2000 MP 12 ¶ 5.

### *2. Denying the Motion on the Basis of Administrative Concerns and Implications for Future Legal Challenges Was Improper.*

¶ 16 The court also raises the concern that granting Petitioner's motion would set the "untenable precedent" of requiring the disqualification of all Superior Court judges any time a long-term employee of the Judiciary is a witness or a party to the case. Super. Ct. Answer at 4. The court reasons that "if every case requiring witness testimony from a 'long-time' employee of the Judiciary would result in recusal of all five Superior Court judges, the [Judiciary] would rapidly exhaust its goodwill with its counterpart in Guam." *Id.* at 4–5. The concern is that to grant this motion would force overreliance on judges pro tempore. *Id.*

¶ 17    Preserving the relationship of mutual goodwill and respect with other jurisdictions and avoiding overreliance on judges pro tempore are important and significant interests. However, our precedent firmly establishes that such considerations are not appropriate when deciding on a motion under 3308(a). *Caja*, 2001 MP 6 ¶ 25 n.4. "Each case must be considered individually," and "the facts of each instance must be considered on a case by case basis, without looking to administrative concerns or future legal challenges." *Id*. Such concerns, though understandable, run afoul of the rule requiring the court to analyze the motion to disqualify "in terms of the facts for that specific request, rather than as part of a greater scheme." *Id*.

¶ 18    Though concerns about the future administrative and legal implications of a 3308(a) motion are immaterial, we add that our decision does not disregard the Superior Court's concern that to grant Petitioner's motion will set the standard that every judge of the Superior Court must self-disqualify any time a long-time employee of the judiciary may be implicated in a case before the court. Super. Ct. Answer at 4–5. Our decision today sets no such standard. Rather, we reaffirm the standard in *Caja* that every motion for disqualification must be considered by the judge on a case-by-case basis. The circumstances of this case are both unique and extreme. We do not hold that a judge must recuse any time a judicial employee, or even a long-time judicial employee, is involved in a case before the Superior Court. Rather, judges considering future motions for disqualification should continue to carefully weigh the various unique factors of each case when determining whether avoidance of the appearance of impropriety requires disqualification under 3308(a).

### 3. Petitioner Did Not Fail to Analyze Why the Court Should Recuse.

¶ 19    Finally, the court reasons that Petitioner failed to analyze why the assigned judge should recuse. Super. Ct. Answer at 6. Under 3308(a), we ask whether "a reasonable person with knowledge of all of the facts would conclude that the judge's impartiality might be questioned." *Bank of Saipan*, 2002 MP 16 ¶ 29. This analysis is objective: it is intended "to prevent justice-shopping and to ensure that a [judge] does not, at the mere sound of controversy, abdicate his duty to preside over cases assigned to him, including the most difficult cases." *Id.* (internal quotation marks omitted). Discerning how a reasonable person with knowledge of all of the facts would view a particular judge's ability to remain impartial requires a careful analysis of the specific context giving rise to the motion for disqualification. *See Caja*, 2001 MP 6 ¶ 25 n.4.

¶ 20    Here, the Superior Court did not conduct a careful analysis of the grounds for disqualification. Instead, the court imposed a new procedural requirement under 3308(a). Specifically, the court seems to have required that Petitioner conduct a "diligent review of all the facts" before filing a motion for disqualification.[2] *See* Super. Ct. Answer at 6. Such a requirement conflicts with

---

2    This language the court quotes finds its source in two prior Superior Court orders analyzing 3308(a): *Commonwealth v. Mundo*, Crim. No. 04–0283 (NMI Super. Ct. Dec 28, 2004) (Order Denying Recusal) and *Commonwealth v. Ogumoro,* Crim. No.13–

our holding that there are no strict procedural requirements for motions made under 3308(a). *Saipan Lau Lau Dev.*, 2000 MP 12 ¶ 5.

¶ 21    The court also incorrectly analyzed the motion under 1 CMC § 3308(b). Super. Ct. Answer at 7. Section 3308(b) addresses actual lack of impartiality, whether because of bias, prejudice or some impermissibly close relationship of the judge to an involved individual. *See* 1 CMC § 3308(b). Here, no specific relationship or bias pertaining to the assigned judge forms the basis for Petitioner's motion. Petitioner moved under 3308(a), which requires a different analysis than 3308(b). The court's finding that the motion was not valid because it failed to provide reasons specific to the assigned judge misses the mark under 3308(a) because "there is no bright line rule stating when circumstances are such as to necessitate recusal." *Caja*, 2001 MP 6 ¶ 25 n.4. Instead, we require every judge ruling on a motion for their disqualification to analyze that specific request, without consideration of any greater scheme. *Id*. Nothing in 1 CMC §§ 3308 or 3309 forbids a party from making an appearance of impropriety argument that could be applicable to every member of the Superior Court. Such an argument, though a troubling and complex proposition, would form a legitimate basis for recusal if the facts of the case supported as much.

### ii. The Court Should Have Disqualified Itself.

¶ 22    We will not find clear error in satisfaction of *Tenorio* factor three simply because a judge has based a disposition of a 3308(a) motion on improper or incorrect considerations. Our standard for clear error is not whether the court's stated reasoning was erroneous, but whether a "rational and substantial legal argument can be made in support of the questioned ruling even though on normal appeal a reviewing court may find reversible error." *In re Buckingham*, 2012 MP 15 ¶ 10. Similarly, though the burden lies with the petitioner to provide the reasons for why the court should be disqualified, see *Santos v. Santos*, 3 NMI 39, 56 (1992), we will determine whether disqualification should have happened based on the factual record in its entirety. *See Caja*, 2001 MP 6 ¶ 25 n.4. Ultimately, our test for clear error is if "after reviewing all the evidence we are

---

0073 (NMI Super. Ct. Oct. 9, 2014) (Order Denying Def.'s Mot. to Disqualify). In both cases, the court denied 3308(a) motions, cautioning defendants not to file such motions in bad faith. Noting that 3308(a) motions are a "direct attack on . . . the impartiality of trial courts," that "impact[] unfavorably upon the public's perception of the administration of justice," the courts exhorted defendants to conduct a "diligent review of the facts" and refrain from filing motions under 3308(a) absent a "sincere belief that the motion is based on solid and meritorious grounds." Crim. No.13–0073 at 5; Crim. No. 04–0283 at 2. The thrust of these remarks was aimed toward safeguarding public trust in the courts, ensuring that motions to disqualify are not made in bad faith. Moreover, the court denied the respective motions to disqualify on other bases, never grounding its denial simply on a party's failure to move in good faith. *See* Crim. No. 04–0283; Crim. No.13–0073. The language the court cites deals with the issue of bad faith. The court here has made no finding of bad faith, nor does it appear to us that Petitioner's motion was made in bad faith.

left with a definite and firm conviction that a mistake was made." *Taitano*, 2017 MP 19 ¶ 44.

¶ 23     The objective standard a judge must apply to a 3308(a) motion is whether "a reasonable person with knowledge of all of the facts would conclude that the judge's impartiality might be questioned." *Bank of Saipan*, 2002 MP 16 ¶ 29. The California Supreme Court, elaborating on the same standard, described it thus:

> [I]f a reasonable mind (not the mind of a particular lawyer or party) would conclude that there is an objective doubt that the judge would be able to remain impartial regardless of the judge's professional efforts to put aside his or her bias, then the judge should disqualify himself or herself.
> Extrajudicial Involvement in Marijuana Enterprises, 2017 Cal. Jud. Ethics Op. LEXIS 1

This standard resists hard line rules, as each case under which disqualification is sought is likely unique. Add to this our requirement that a judge consider disqualification without consideration for the potential future implications of such disqualification, *Caja,* 2001 MP 6 ¶ 25 n.4, and our standard becomes clear: we will only find clear error if after reviewing the circumstances of the instant case—and only the instant case—we are left with a definite and firm conviction that a reasonable person with knowledge of all of the facts would doubt the court's ability to remain impartial.

¶ 24     The circumstances giving rise to Petitioner's motion are uncommon. Though this is not the first motion for disqualification involving Judiciary employees, see, for example, *Santos*, 3 NMI 39 (1992), this is the first case we have seen where both the accused and the alleged victim were not only Judiciary employees, but employees who worked in chambers at the Superior Court.[3] The uniqueness of these circumstances likely explains the uniqueness of Petitioner's motion to disqualify the judge purely because he is a Superior Court judge.

¶ 25     To answer the question of whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be questioned, it is essential to identify the important facts. We have identified five factors that other courts have weighed when judicial employees are involved, or motions alleging a general appearance of impropriety for the entire bench. These factors include:

1. The number of judiciary employees involved;
2. Whether the assigned judge has actually met or knows the employees;

---

[3]     We use the term "in chambers" to describe the nature of Petitioner's and the alleged victim's employment. Both were directly supervised by a judge of the Superior Court. Though the physical layout of the Superior Court may not find both of these employees officed in the actual judge's chambers, the day-to-day responsibilities for both employees' positions are related to the in-chambers work of a judge.

3. Whether the employees are expected to be called to testify in the case;
4. The institutional and spatial proximity that the judiciary employees have to the assigned judge; and
5. Whether the movant has demonstrated a sincere belief that the assigned judge's continued presence over the case creates the appearance of impropriety.

This list is neither exhaustive nor exclusive; rather, it is the result of careful consideration of the specific facts of this case.

### 1. Petitioner and the Alleged Victim Each Individually Constitute Avenues by Which a Reasonable Person Could Question the Court's Impartiality.

¶ 26　　The appearance of impropriety can be the result of a combination of factors, rather than a single factor. The presence of multiple potential means by which impartiality may be questioned, when taken together, can create the appearance of impropriety where one factor alone would have been insufficient. The Ohio Supreme Court held as much in *In re Nugent*, 546 N.E.2d 927, 927 (Ohio 1987), where a defendant sought disqualification of every judge of a court when the victim was the nephew of a judge of the court, the victim's mother was an employee of the court, and the victim's father was a former employee of the prosecutor's office. *Id.* While the Ohio Supreme Court held that no single factor would necessarily compel disqualification, the combination of the factors led "to but one conclusion." *Id.* We have held in previous cases that a Judiciary employee having a stake in the case does not automatically require a judge's recusal. *See, e.g.*, *Santos*, 3 NMI at 56. By contrast, here, the fact that both the Petitioner and the alleged victim are Superior Court employees creates two means by which a reasonable person could conclude that the judge's impartiality might be questioned. In effect, the total is greater than the sum of its parts: the fact that both were Superior Court employees at the operative time weighs toward leaving this Court with the definite and firm conviction that a reasonable person would question the court's ability to remain impartial.

### 2. Petitioner and the Alleged Victim Are Not Strangers to the Judge.

¶ 27　　Whether a judge has actually met the individuals in the case, though perhaps basic at first glance, is an important consideration. We have no reason to question the statement that the judge has no meaningful personal or professional relationship with the individuals involved. Super. Ct. Answer at 7. Indeed, we presume that a judge is able to follow the law and remain unbiased. *See Office of the Att'y Gen. v. Super. Ct.*, 1999 MP 14, ¶¶ 16–17; *In re Russo*, 127 Ohio St. 3d 1232 (Ohio 2009). The appearance of impropriety is much lower in a case where a judge has never met the individual whose ties to the court form the basis for disqualification. The Supreme Court of Delaware found similarly when it held that disqualification was not warranted in a case where the alleged victim's mother was a court employee, but the trial judge had never actually met her. *Hearne v. State*, 176 A.3d 715, 2017 Del. LEXIS 512, *6. This factor is rooted in logic. A judiciary, or even a court, can be a very large institution with hundreds

of employees. The mere fact that a judge and another individual are both employees of the same judiciary does not, in itself, create the appearance of impropriety if the two can be said to have never met.

¶ 28    If it could be said that the judge had never met Petitioner or the alleged victim, the risk of the appearance of impropriety would be low. It is, however, likely that the judge has met or crossed paths with either Petitioner, who was employed as a law clerk for a fellow judge, or the alleged victim, a long-time employee of the Superior Court, if not both. *See* Super. Ct. Answer at 7, Ex. 2 at 2. Despite there being no significant relationship with either employee, the fact that they cannot be said to be strangers to the judge would contribute to leading a reasonable person to question his ability to remain impartial.

### 3. Both Petitioner and the Alleged Victim Can Be Expected to Testify.

¶ 29    A third consideration is whether the individual in question is anticipated to testify in the case, and the relative weight of such testimony. A trial judge's duties include assessing witnesses' credibility and competence. In *Hearne*, the Delaware Supreme Court reasoned that disqualification was unnecessary in part because the judiciary employee with ties to the case was not expected to be called as a fact witness by either party. 176 A.3d 715, 2017 Del. LEXIS 512, *8. By contrast, in *In re O'Neill*, the Ohio Supreme Court found the fact that both a senior administrator and a judge from the same court would be called as fact witnesses in a case to require recusal of all judges of that court and reassignment to a judge in another court. 688 N.E.2d 516, 517 (Ohio 1997). The court in *O'Neill* focused on the fact that the judge on the case would be required to make "assessment[s] of the [employees'] testimony and perhaps [their] involvement in the investigation." *Id.*

¶ 30    Here, unlike *Hearne*, both Petitioner and the alleged victim will almost certainly testify. The Complaint and Affidavit of Probable Cause in Support of the Issuance of an Arrest Warrant details an alleged crime occurring with no other witnesses present besides Petitioner and the alleged victim. *See* Super. Ct. Answer Ex. 2 at 3–4. While we cannot say what evidence the Commonwealth or the defense intend to bring at trial, as key witnesses, we cannot discount the likelihood that the defendant and alleged victim will testify. A judge's duties include managing the case, determining the admissibility of evidence, and assessing the credibility of witness testimony. The key witnesses' close ties to the Superior Court weigh in favor of finding that a reasonable person would question the judge's ability to remain impartial.

### 4. Petitioner and the Alleged Victim Are Superior Court Employees, and the Alleged Victim Works in Close Proximity to the Judge's Office.

¶ 31    Other courts have considered and weighed the spatial and institutional proximity of judicial employees to the judge when a judicial employee is connected to a case before the court. In *State v. Sheldon*, the fact that an individual with ties to a case was a judicial employee did not weigh in favor of disqualification because, even though the employee worked in the same courthouse as the judge, they were employed in a different division on a different

floor—providing sufficient institutional and proximal distance as to avoid the appearance of impropriety. 99 N.E.3d 410, 411 (Ohio 2017).

¶ 32    The NMI Judiciary is comprised of separate offices and divisions, and has locations in Saipan, Tinian, and Rota. Many judicial employees work in offices sufficiently separate and distinct from the Superior Court chambers that the appearance of impropriety, should they become involved in a case before the Superior Court, would be considered low. Here, Petitioner and the alleged victim are employed in chambers at the Superior Court. That the judge has no significant relationship with either individual does not change the close institutional and spatial proximity between the judge and the involved employees.

¶ 33    Moreover, the alleged victim and the judge can reasonably be expected to cross paths while the matter is pending. In *Nugent*, a factor that weighed in favor of recusal was that the victim's parents and uncle, all court employees, were anticipated to come into contact with the judge while the case was pending. 546 N.E.2d at 927. In *Hearne*, disqualification was disfavored because the judicial employee was not expected to come into contact with the judge in the case. 176 A.3d 715, 2017 Del. LEXIS 512, *8. Here, we cannot be certain that the judge will not cross paths with the alleged victim. While we have full faith that the judge would not participate in any *ex parte* communications with the alleged victim, the purpose of 3308(a) is to avoid the appearance of impropriety to a reasonable person with knowledge of all the facts. *Bank of Saipan*, 2002 MP 16 ¶ 29. We cannot set aside the effect that knowledge of possible contact between the complaining witness and the judge would have on a reasonable person's conclusions about the impartiality of the court.

### 6.    *Petitioner has Demonstrated a Sincere Belief that Disqualification Is Necessary to Avoid the Appearance of Impropriety.*

¶ 34    A final factor which could affect a reasonable person's belief in the court's impartiality is whether the party moving for disqualification has demonstrated a sincere belief that the judge's continued presence over the case creates the appearance of impropriety. *See, e.g., Saipan Lau Lau Dev.*, 2000 MP 15 ¶ 3 (requiring motions for disqualification under 3308(b) alleging actual bias or prejudice to be filed in conjunction certificate of good faith by the movant's attorney). Public confidence in the court's ability to remain impartial is tied to the parties' demonstrated confidence, or lack thereof, in the court's impartiality. As such, when a party alleges an actual bias or prejudice, we require that the moving party aver to the sincerity of their belief. *Id*; NMI CODE JUD. COND., Canon 3(D)(c). Even when procedure does not require the moving party to swear to the sincerity of its belief, the question of sincerity nevertheless affects a reasonable person's perception of the court's impartiality.

¶ 35    Our objective test asks about the perception of a reasonable person with knowledge of all the facts, and one relevant fact is whether the moving party has demonstrated consistency in requesting disqualification. In *Russo*, the Ohio Supreme Court based its denial in significant part on the four-month delay that occurred between the assignment of the judge and the party's motion for

disqualification. 127 Ohio St. 3d at 1233. The *Russo* court reasoned that such a delay while the judge continued to preside over the case and make rulings constituted a tacit acknowledgment by the moving party that no appearance of impropriety existed. *Id*.

¶ 36    By contrast, Petitioner moved for disqualification on the same day that the case was reassigned. *Compare* Super. Ct. Answer Ex. 11 at 4 *with* Super. Ct. Answer Ex. 16. This demonstrated Petitioner's sincere belief that the assigned judge cannot maintain an appearance of impartiality in his case. This factor, in combination with the other factors, *supra* at ¶ 26, would tend to lead a reasonable person to question the court's impartiality.

¶ 37    Though we begin with high deference for the Superior Court, *Liu*, 2006 MP 5 ¶ 17, we will find clear error when, after reviewing all the evidence, we are left with the definite and firm conviction that the court made a mistake. *Taitano*, 2017 MP 19 ¶ 44. Petitioner's argument compels us to conclude that Judge Camacho's continued presence over this case creates the appearance of impropriety when the defendant and the alleged victim have both worked, or continue to work, in relatively close proximity to the judge. Particularly compelling is that the implicated employees are key witnesses and, rather than being mere Judiciary employees, have worked or continue to work in-chambers at the Superior Court. The judge would eventually be assessing the credibility or the admissibility of their testimony. In light of these facts, we find that no rational and substantial legal argument can be made in support of the court's denial of the 3308(a) motion. No single fact here would, by itself, necessarily require disqualification, but the combination of all the factors we have considered leaves us with the definite and firm conviction that a reasonable person with knowledge of all the facts would conclude that the judge's impartiality could be questioned. Having reviewed all the evidence and weighed it in light of the factors identified, we find the court committed clear error in denying Petitioner's motion.

¶ 38    Having found clear error, we will not automatically grant mandamus unless the weight of the *Tenorio* factors favors mandamus. *See, e.g., In re Babauta*, 2016 MP 6 ¶ 19. We consider the remaining *Tenorio* factors in turn.

*C. Petitioner Has No Other Adequate Means to Attain the Relief Desired and Will Be Damaged or Prejudiced in a Way Not Correctable on Appeal.*

¶ 39    The Commonwealth contends that factor one weighs against mandamus because Petitioner, if convicted, may appeal the denial of his motion on direct appeal after trial. Commonwealth Resp. Br. at 5–6. Both direct appeal and mandamus are appropriate avenues for contesting the denial of 3308(a) motions. *Tudela*, 2010 MP 6 ¶¶ 8–9. However, whether direct appeal is an *adequate* means for challenging the denial requires consideration of the harm that Petitioner may experience if required to wait until direct appeal is available. *Id.* at ¶ 9. For this reason, we often consider *Tenorio* factors one and two in conjunction with one another. *Id.*

¶ 40    Among the harms he enumerates, Petitioner argues that to require a trial and conviction before allowing him to appeal the denial of his 3308(a) motion would lead to him to being incarcerated awaiting appeal. Appellant's Reply Br. at 1–2. Imprisonment is the type of harm that weighs in favor of *Tenorio* factors one and two. *Tudela*, 2010 MP 6 ¶ 9. Accordingly, we find that factors one and two favor mandamus.

### D. The Error Is Not Oft-Repeated.

¶ 41    Under factor four, we weigh whether the "lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules." *Tenorio*, 1 NMI 1 at 10. The Commonwealth claims *Tenorio* factor four weighs in favor of mandamus. Commonwealth Resp. Br. at 7. It takes a broad view of factor four, asserting that our recent decision in *In re Commonwealth v. Super. Ct.*, 2023 MP 5 ("*In re Commonwealth* (2023)"), stands for the proposition that the lower court "has a history of disregarding law in criminal cases (especially sex crime cases)." Commonwealth Resp. Br. at 7.[4] Since the Commonwealth has raised the issue, we take the opportunity to clarify the scope of factor four.

¶ 42    We have held that a single instance of an alleged error does not reach the level of frequency to be "oft-repeated error". *In re Babauta*, 2016 MP 6 ¶ 17. The alleged oft-repeated error must be the *same error*; an allegation of error will not succeed simply by alluding to a general area of law where the judge has ostensibly failed. Instead, we require a party to identify prior instances of the "same legal error." *In re Commonwealth*, 2015 MP 7 ¶ 21; *see In re Cushnie*, 2012 MP 3 ¶ 11 (finding *Tenorio* factor four weighs against mandamus when no previous petition for mandamus had been made regarding the same issue). Factor four is purely retrospective, looking at actual past errors and rejecting speculative arguments that mandamus will prevent future repetition of error. *NMI Scholarship Bd. v. Super. Ct.,* 2007 MP 10 ¶ 8.

¶ 43    We have recognized repeatedly that *Tenorio* factors four and five form "opposite sides of the same coin and are rarely if ever present together." *In re Commonwealth*, 2015 MP 7 ¶ 20 (quoting *Liu*, 2006 MP 5 ¶ 20). This

---

[4]    The Commonwealth must strive for accuracy and precision when arguing in favor of factor four. We have previously remarked that:

> [I]n our island community . . . a criticism of one judge is automatically reflected on all the other judges of this Commonwealth. Because judges are restrained by tradition and the judicial canons from responding to criticisms leveled against them or their decisions, sustained and inaccurate criticism would not only erode public trust and confidence in the judges but also in the Commonwealth Judiciary itself.
> *Office of the AG v. Super. Ct.*, 1999 MP 14 ¶ 17.

Though, from time to time, the lower court will inevitably commit error, it is inaccurate to say that any judge historically disregards the law in criminal cases. Mandamus is an extraordinary form of relief, and any mandamus inquiry begins (and frequently ends) with "high deference" for the Superior Court. *Xiao Ru Liu*, 2006 MP 5 ¶ 17.

presumptive dichotomy is only logical, since it would be a unique circumstance for a Superior Court order to represent both an "oft-repeated error" and also "raise[] new and important problems, or issues of law of first impression." *Id.* For this reason, we frequently merge the two factors in our analysis, asking as part of our mandamus inquiry whether a Superior Court decision is an oft-repeated error or raises new issues of law. *See, e.g., Commonwealth v. Super. Ct.*, 2020 MP 22 ¶ 28; *NMHC v. Techur*, 2020 MP 18 ¶ 15.

¶ 44    The purpose of factor four is not to afford parties a pathway to mandamus by merely alluding to previous errors. Instead, factor four exists as an analytical framework for this Court to determine whether past decisions indicate a pattern of some specific incorrect application of the law or disregard for the rules sufficiently severe as to justify our intervention. Given the extraordinary nature of such an intervention, the evidentiary burden of proving factor four falls on the party alleging an oft-repeated error or persistent disregard for the rules. *In re Babauta*, 2016 MP 6 ¶ 17. The claim that the Superior Court's error is oft-repeated seemingly sidesteps this evidentiary burden by incorporating by reference our recent decision in *In re Commonwealth* (2023).

¶ 45    At issue in *In re Commonwealth* (2023) was a dismissal of a sexual assault charge at a preliminary hearing for lack of probable cause. 2023 MP 5 ¶ 6. There, we determined the dismissal for lack of probable cause was clearly erroneous because the court applied the incorrect standard for analyzing evidence, "elevat[ing] the burden of proof" beyond determining whether the prosecution had presented "believable evidence of all the elements of the crime charged." *Id.* at ¶¶ 23–24 (internal quotation marks omitted). As we have stated, the question of clear error is dispositive, and therefore a threshold issue. *In re Commonwealth*, 2016 MP 8 ¶ 8. Upon determining that the court clearly erred, we then considered the remaining *Tenorio* factors to determine if circumstances warranted mandamus. We decided in favor of mandamus on factors one and two because the Commonwealth had no other means of obtaining relief and would be damaged in a way not correctable on appeal. *In re Commonwealth* (2023), 2023 MP 5 ¶¶ 24–30. Finally, we analyzed the court's error under factors four and five, asking whether the error was oft-repeated and whether it raised important issues of law. *Id.* at ¶¶ 31–32. Under factor five, we found that while this Court had "issued rulings detailing the proper scope and focus of preliminary hearings," we had not yet addressed the probable cause standard and how courts evaluate prosecutions when the facts are disputed, as well as "the extent to which the trial court at a preliminary hearing can weigh evidence and evaluate witness credibility." *Id.* at ¶ 32. We determined that the court's order raised an issue of first impression and favored granting mandamus.

¶ 46    Additionally, we discussed factor four. We found that, while there were no previous instances of the same legal error, issues at preliminary hearings for sexual assault related to evidence and burdens of production were providing fertile ground for many petitions and even some grants of mandamus by this Court. *See id.* at ¶ 31. Since the lower court's order in *In re Commonwealth*

(2023) presented an issue of first impression in an area of law that had been the source of much contention, we determined, in light of the other three *Tenorio* factors, that mandamus was warranted. *Id.* at ¶ 33.

¶ 47    *In re Commonwealth* (2023) does not change the standard for *Tenorio* factor four. Our standard remains that for factor four to favor mandamus, the erroneous decision must be a repetition of the *same legal error* made on at least more than one other occasion. *In re Commonwealth*, 2015 MP 7 ¶ 21; *In re Babauta*, 2016 MP 6 ¶ 17. The error in *In re Commonwealth* (2023) was not the same legal error, so on its own factor four did not favor mandamus. Factor four in that case should not be considered in isolation; rather, the analysis is properly understood in conjunction with the analysis of factor five, since the two factors form "opposite sides of the same coin." *Liu*, 2006 MP 5 ¶ 20. *In re Commonwealth* (2023) holds that factor five—and factor four by nature of the indelible relationship between the two factors—weighs in favor of mandamus because the error presented a new and important issue of law in a complex area of law that has generally proved difficult for the lower court to navigate without erring.

¶ 48    Given that *In re Commonwealth* (2023) did not set a new standard, the argument that factor four favors mandamus in the present case can only be correct if the error in this case is the same legal error we identified in the recent case. The previous error dealt with a case dismissal at a preliminary hearing on the basis of an improper weighing of the evidence in a probable cause analysis. Here, the error is a failure to disqualify to avoid the appearance of impropriety—an issue which is always unique and fact-driven. The issue of judge disqualification is one that will always require a context-based determination, and is unlikely to form the basis for the sort of oft-repeated error that factor four exists to address. We find that factor four does not weigh in favor of granting mandamus.

### E. The Order Raises New and Important Problems and Issues of Law of First Impression.

¶ 49    This is a case of first impression. Neither party has cited, nor have we found in our jurisprudence, any past decision where we have been asked to decide on the appropriate standard for motions for disqualification when the motion alleges a general question about the impartiality of the Superior Court as a whole.[5] We find the fifth factor weighs in favor of mandamus.

### IV. Conclusion

¶ 50    The balance of the *Tenorio* factors weighs in favor of granting mandamus. The Superior Court committed clear error by failing to grant Petitioner's motion for disqualification under 3308(a). Petitioner has no adequate means of obtaining the desired relief because he risks damage or prejudice in a way not correctable on appeal. While the error is not one that is oft-repeated or manifests a persistent

---

[5]    The fact that this case raises new and important problems likely sheds some light on the Superior Court's concerns about the administrative implications of disqualification in this case.

disregard for the rules, it does raise new and important problems and issues of first impression. For the foregoing reasons, Abraczinskas' Petition for Writ of Mandamus is GRANTED, and the Superior Court's Order denying the Motion for Disqualification is VACATED. The Superior Court shall reassign Abraczinskas' case to another judge.

SO ORDERED this 14th day of December, 2023.


 /s/
JOHN A. MANGLOÑA
Associate Justice


 /s/
PERRY B. INOS
Associate Justice


CASTRO, C.J., concurring:

¶ 51    I concur with the majority's holding that the balancing of the *Tenorio* factors weighs in favor of granting the writ of mandamus but write separately to underscore that the majority's reasoning applies to the remaining Superior Court judges who have not recused themselves from this case.

¶ 52    In analyzing the threshold question of whether the lower court committed clear error, the majority applied a five-factor analysis. In essence, the majority found that Judge Camacho's continued involvement over this case gives rise to the appearance of impropriety due to several critical factors: the close professional proximity of both the Petitioner and the alleged victim to Judge Camacho; the two implicated employees are key witnesses to the case; the employees in question have worked or continue to work in chambers; and Judge Camacho will be responsible for assessing the credibility or the admissibility of the Petitioner and the alleged victim's testimony. It is important to underscore that disqualification decisions require a case-by-case analysis, initiated either by the judge's own discretion or by a motion from one of the involved parties. *See Commonwealth v. Caja,* 2001 MP 6 ¶ 25 n.4; 1 CMC § 3309. However, the majority's rationale carries broader implications. The factors considered in this case inevitably lead to the conclusion that the appearance of impropriety extends beyond the judge assigned to this case and applies to the impartiality of all current sitting Superior Court judges.

/s/
ALEXANDRO C. CASTRO
Chief Justice


COUNSEL

Douglas Hartig, Public Defender, Saipan, MP, for Petitioner.


Edward Manibusan, Attorney General, Saipan, MP; J. Robert Glass Jr. Solicitor General, Saipan, MP, for Respondent.

NOTICE

This slip opinion has not been certified by the Clerk of the Supreme Court for publication in the permanent law reports. Until certified, it is subject to revision or withdrawal. In the event of any discrepancies between this slip opinion and the opinion certified for publication, the certified opinion controls. Readers are requested to bring errors to the attention of the Clerk of the Supreme Court, P.O. Box 502165 Saipan, MP 96950, phone (670) 236–9715, fax (670) 236–9702, e–mail Supreme.Court@NMIJudiciary.gov.